# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LAMONT MAURICE BUCHANAN, | ) | CASE NO. 5:14-cv-01656 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JASON BUNTING, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Lamont Maurice Buchanan ("Buchanan"), challenges the constitutionality of his conviction in the case of *State v. Buchanan*, Stark County Court of Common Pleas Case No. 2012CR002.  Buchanan, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on July 28, 2014.  On October 2, 2014, Warden Jason Bunting ("Respondent") filed his Answer/Return of Writ.  (ECF No. 9.)  Buchanan filed a Traverse on December 9, 2014.  (ECF No. 11.)  For reasons set forth in detail below, it is recommended that Buchanan's petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v.*

*Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts

underlying Buchanan's conviction as follows:

> P1  On January 30, 2012, the Stark County Grand Jury indicted appellant, Lamont
> Buchanan, on one count of aggravated burglary in violation of R.C. 2911.11 and
> one count of aggravated robbery in violation of R.C. 2911.01, both with firearm
> specifications, and one count of having weapons while under disability in
> violation of R.C. 2923.13. Said charges arose from the robbery of Willie Powell
> while in a residence with his girlfriend, Stephanie Christmas.

* * *

> P11  The victim, Willie Powell, testified he heard a knock at the door and when
> he answered, he observed a "little kid," O'Shea Walker, and then he saw appellant
> "come around the corner with the gun."  T. at 133.

> P12  Autum Welsh was a friend of appellant's who was with appellant and his
> nephew, O'Shea, when they knocked on appellant's door.  T. at 272-274.  Ms.
> Welsh was seated in her vehicle.  T. at 273, 275.  Ms. Welsh testified O'Shea was
> at the front door and knocked and appellant "was like right beside him over here."
> T. at 274.  Ms. Welsh was indicating the positions of the two men on a
> photograph.  T. at 273-274.  Ms. Welsh stated the door opened and "a black man
> let them in."  T. at 274.

> P13 Appellant argues the prosecutor misstated Ms. Welsh's testimony by stating it
> was like Mr. Powell's  (T. at 397):

>> And you heard Autum Welsh's testimony, which she was not obviously
>> Chatty Cathy up there, but she corroborates that; that she's sitting there in
>> the car, and she sees O'Shea at the door and Lamont to the side, like Willie
>> said.  And they go in and no, she didn't see a gun.  It's dark, she's not right
>> there, and it's not to say there wasn't one.  She couldn't see it from her
>> view, and they are not there long at all before she sees a girl run out the back
>> door in shorts and a T-shirt in the middle of the night in the middle of the
>> winter.  This girl runs out the back door and runs into another apartment just
>> minutes later.  Again, she is corroborating what Willie and Stephanie have
>> told you.

* * *

> P15 Stephanie Christmas was present when appellant and O'Shea entered the
> residence. T. at 202-203.  Although appellant ordered Ms. Christmas to sit down,

-2-

she ran from the residence.  T. at 205.  She went to a neighbor's residence and called 911.  T. at 210-211.  Thereafter, Mr. Powell appeared and the two of them returned to their residence to retrieve her children.  T. at 211-212.  She stated the children were sleeping.  T. at 212.

\* \* \*

P25  The defense theory as advanced in opening statement was that appellant went to the Powell/Christmas residence to buy marijuana from Mr. Powell.  T. at 121 122.  An argument ensued and Mr. Powell stabbed appellant.  T. at 124-125.  Appellant never had a gun and none was found on the premises.  T. at 127.

P26  Mr. Powell testified differently.  O'Shea knocked on the door and Mr. Powell recognized him as a kid from the neighborhood.  T. at 132-133.  Mr. Powell opened the door and appellant "come around the corner with the gun and put it to my head."  T. at 133, 143.  Appellant demanded "everything you got" and made O'Shea search Mr. Powell's pockets and remove $6.00 in cash.  T. at 134. Mr. Powell begged for appellant to let Ms. Christmas go because she was pregnant and appellant threatened to "blow her fucking brains out, I'm going to blow your fucking brains out."  T. at 135.  Ms. Christmas ran and exited the back door.  T. at 136, 208.  Appellant still had the gun to Mr. Powell's head and threatened to blow his brains out.  *Id*.  Mr. Powell observed appellant's hand on the trigger "like he ain't going to pull the trigger" so he hit appellant and a fight ensued.  T. at 137.  The gun fell to the floor and O'Shea picked it up and ran out of the house.  *Id*.  Mr. Powell kicked appellant, grabbed a kitchen knife, and stabbed appellant.  *Id*.  Appellant collapsed and Mr. Powell retrieved his $6.00. T. at 138.  Mr. Powell believed appellant was dead.  *Id*.  He then ran out the back door looking for Ms. Christmas and appellant got up and left the house.  T. at 138-139.  Mr. Powell testified appellant's gun was a "[l]ong nose .22 revolver," and identified appellant as the person who broken in and robbed him.  T. at 150, 157.

P27  Ms. Christmas testified as to the knock on the door and as soon as Mr. Powell opened the door, appellant "came right behind the boy" and held a gun to Mr. Powell's head.  T. at 204.  When she attempted to leave, appellant ordered her to sit down and threatened to blow her brains out and Mr. Powell's too, but she managed to exit the back door.  T. at 205, 207-208.  She heard appellant ordering Mr. Powell to give him everything he had.  T. at 207.  Ms. Christmas called 911 and the tape was played for the jury.  T. at 210.  She also identified appellant as the assailant.  T. at 217.

P28  Ms. Welsh testified she waited in her vehicle while appellant and O'Shea went up to the door of Mr. Powell's residence.  T. at 272, 275.  She observed

O'Shea knock on the door and appellant "was like right beside him." T. at 274. The door opened and "a black man let them in" and then the door was shut. *Id*. She never saw a gun. *Id*. She observed Ms. Christmas running from the back of the building. T. at 175. O'Shea came to her vehicle and told her to pull up to the dumpster, and then appellant came out, holding himself and asking for help. T. at 275-276. She started driving and police cars cut her off. T. at 277. O'Shea jumped from the vehicle and ran and the police removed Ms. Welsh from her vehicle. T. at 278.

P29  Canton City Police Patrolman Jim Nixon received a dispatch about a gun burglary in progress and responded. T. at 292. He observed the vehicle as described to him by dispatch. T. at 293-294. Before he could execute a stop, the vehicle pulled over and a young black male jumped out of the car. T. at 294-295. The male who ran had his hands in front of him in an unusual manner. T. at 296. Appellant was still in the vehicle, bleeding with stab wounds. T. at 298.

*State v. Buchanan*, Case No. 2012CA00114, 2013 Ohio App. LEXIS 975, 2013-Ohio-3210

(Ohio Ct. App., Mar. 22, 2013).

## II. Procedural History

### A.   Conviction

In November of 2011, a Stark County Grand Jury charged Buchanan with one count of aggravated burglary in violation of Ohio Revised Code ("O.R.C.") § 2911.11(A) together with a firearm specification, one count of aggravated robbery in violation of O.R.C. § 2911.01(A)(1) together with a firearm specification, and one count of having weapons while under disability in violation of O.R.C. § 2923.13(A).  (ECF No. 9-1, Exh. 1.)  After a jury trial, Buchanan was found guilty as charged.[1]  (ECF No. 9-1, Exhs. 3 & 4.)  On May 10, 2012, the trial court sentenced Buchanan to an aggregate term of twelve years incarceration with post-release control. (ECF No. 9-1, Exh. 6.)

---

[1]  Buchanan had waived his right to a jury trial with respect to Count Three.  The trial court separately found Buchanan guilty of having weapons while under disability in violation of O.R.C. § 2923.13(A).  (ECF No. 9-1, Exh. 5.)

-4-

**B.    Direct Appeal**

On June 7, 2012, through new counsel, Buchanan filed a Notice of Appeal with the Court

of Appeals for the Fifth Appellate District ("state appellate court") raising the following

assignments of error:

> 1.    The trial court abused its discretion in giving a flight instruction to the jury
>        when the evidence adduced at trial did not substantiate the instruction.
>
> 2.    The appellant was denied his right to a fair trial due to prosecutorial
>        misconduct.
>
> 3.    The trial court's finding of guilty was against the manifest weight of the
>        evidence and was not supported by sufficient evidence.

(ECF No. 9-1, Exhs. 7 & 8.)[2]

On March 22, 2013, Buchanan's convictions were affirmed.  (ECF No. 9-1, Exhs. 13 &

14.)

On May 6, 2013, Buchanan, *pro se*, filed a Notice of Appeal with the Supreme Court of

Ohio.  (ECF No. 9-1, Exhs. 15 & 24.)  In his Memorandum in Support of Jurisdiction, Buchanan

raised the following arguments:

> I.    When a trial court gives a jury instruction 'on flight' to which [the
>        evidence adduced at the trial] did not substantiate, the court abuses its
>        discretion and the defendant is deprived both: due process of law and a
>        fundamentally fair trial. see: <u>People v. Green</u> (1980), 27 Cal. 3d 1; and,
>        <u>State v. Craft</u> (1977), 52 Ohio App. 2d 1, 7.
>
> II.   A criminal defendant's right to a fair trial is constitutionally implicated
>        where, as here, prosecutorial misconduct so infected the trial in unfair

---

[2]  Buchanan filed a motion to supplement his brief as pages eight through eleven had been
omitted from the original brief.  (ECF No. 9-1, Exh. 9.)  The motion was initially denied
(ECF No. 9-1, Exh. 10), but a motion for reconsideration appears to have been granted as
the appellate court considered the second assignment of error, and addressed it in its
opinion.  (ECF No. 9-1, Exhs. 11 & 13.)

prejudice so as to amount to a denial of due process. <u>Berger v. United States</u> (1935), 295 U.S. 78.

III.   A finding of guilt not supported by the manifest weight of the evidence must fail as a matter of law and fact. see: <u>Tibbs v. Florida</u> (1982), 457 U.S. 31, 41-43; <u>Jackson v. Virginia</u> (1979), 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560; and, <u>State v. Jenkins</u> (1991), 61 Ohio St. 3d 259.

(ECF No. 9-1, Exh. 16.)

On July 24, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4).  (ECF No. 9-1, Exh. 18.)

**C.   Application to Reopen Appeal**

On May 16, 2014, Buchanan, *pro se*, filed an application to reopen his direct appeal pursuant to Ohio App. R. 26(B).  (ECF No. 9-1, Exhs. 19 & 23.)

On June 30, 2014, the state appellate court noted that Buchanan's application was untimely, that he did not demonstrate good cause for the delay, and denied the application without addressing the merits.  (ECF No. 9-1, Exh. 21.)

According to documents submitted by Buchanan and attached to his traverse, a subsequent attempt to appeal the denial of his Rule 26(B) application was rejected by the Supreme Court of Ohio as untimely and the documents were returned to Buchanan unfiled.  (ECF No. 11-1.)

**D.   Federal Habeas Petition**

On July 28, 2014, Buchanan filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

GROUND ONE: Trial court conviction lacked sufficiency and manifest weight in light of the evidence

Supporting Facts: Evidence was presented to support self-defense rather than the charges alleged as this petitioner himself suffered numerous stab wounds from the

-6-

alleged victim who simply manufactured the robbery story to cover his own illegal actions including drug dealing.  Any credibility of the alleged victim's should be zero due to numerous inconsistencies and the self serving need to lie.  The victim's children slept through the alleged robbery.  Such an improper conviction violates the 5th and 14th Amendments guarantee of a fair trial and the due process of law.

GROUND TWO: Improper flight instruction

Supporting Facts: The trial court deprived this petitioner of a fair trial and the due process of law under the 5th and 14th Amendments when it gave the jury a flight instruction when the evidence adduced at trial did not in any way support such an instruction since no actual flight whatsoever occurred.

GROUND THREE: Prosecutorial misconduct

Supporting Facts: The prosecutor, in closing arguments, misstated evidence, improperly vouched for witnesses, implied that the defense attorney intentionally mislead the jury and improperly commented on the alleged victim's children sleeping through the alleged attack all of which deprived this appellant of a fair trial and the due process of law under the 5th and 14th Amendments.

GROUND FOUR: Ineffective assistance of appellate counsel

Supporting Facts: Appellate counsel, who was appointed by the State, failed to raise numerous substantial claims of ineffective assistance of trial counsel which had they been raised would have changed the outcome of the appeal in favor of the petitioner in violation of the 5th, 6th and 14th Amendments.

GROUND FIVE: Ineffective assistance of trial counsel

Supporting Facts: Based upon the pending 26b application and the facts contained therein.  Pending in Post-conviction petition 26b.

(ECF No. 1.)

## III.  Exhaustion and Procedural Default

**A.   Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the

-7-

highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

**B.  Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3] *Id.*

---

[3]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002). "In

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis

---

determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a

"petitioner must present his claim to the state courts as a federal constitutional issue--not merely

as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A

petitioner can take four actions in his brief which are significant to the determination as to

whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon

federal cases employing constitutional analysis; (2) reliance upon state cases employing federal

constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well

within the mainstream of constitutional law."  *Newton v. Million*, 349 F.3d 873, 877 (6th Cir.

2003).

     A petitioner's procedural default, however, may be excused upon a showing of "cause"

for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at

138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense

impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434

F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with

constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See*

*United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th

Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless

petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been

different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*,

-10-

527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough   a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

## C.  Application to Buchanan

Respondent asserts that grounds two through five are procedurally defaulted.  With respect to ground two, Respondent, while conceding that Buchanan raised an argument concerning an allegedly improper flight instruction before both the appellate court and the Ohio Supreme Court, argues the claim is nonetheless defaulted.  Specifically, Respondent avers that ground two was never presented as a federal constitutional claim to the state appellate court. (ECF No. 9 at 17-18.)  With respect to ground three, Respondent asserts that Buchanan's failure to object at trial, and the appellate court's subsequent enforcement of the contemporaneous objection rule, renders Buchanan's prosecutorial misconduct claim defaulted.  (ECF No. 9 at 19-21.)  Finally, with respect to grounds four and five, Respondent asserts that these claims are barred as they were never considered by Ohio courts due to the untimeliness of Buchanan's Rule 26(B) application.  (ECF No. 9 at 20-22.)

### 1.  Ground Two: Flight Instruction

Respondent asserts that Buchanan never fairly presented Ground Two as a federal

-11-

constitutional claim to the Ohio courts, noting that "[n]othing in his appellate brief would have alerted the Ohio Court of Appeals to the fact that he was raising a due process or any other type of federal constitutional claim, and the appellate court did not address the claim as one arising under the federal constitution." (ECF No. 9 at 17.) While acknowledging that Buchanan presented the claim as one involving due process when he filed a *pro se* appeal with the Ohio Supreme Court, Respondent contends that the issue is not thereby preserved for habeas review. Respondent argues that the Ohio Supreme Court was limited to reviewing the *same* claims that were raised before the state appellate court and may *not* review new arguments.

"Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *accord Fulcher v. Logan County Circuit Court*, 459 Fed. App'x 516, 522 (6th Cir. 2012) ("The very purpose of the exhaustion requirement is to 'give the state courts an opportunity to act on [a petitioner's] claims before he presents those claims to a federal court in a habeas petition' .... Accordingly, the claim was left unexhausted and is now procedurally defaulted.")

Here, Buchanan did not fairly present a federal constitutional violation in connection with his argument that a flight jury instruction was improper. (ECF No. 9-1, Exh. 8 at pp. 6-7.) A claim is only adequately raised on direct appeal if a petitioner asserts both the legal and factual basis for his claim. *See McMeans*, 228 F.3d at 681. A habeas petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a

denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

In his brief before the state appellate court, Buchanan argued only that the trial court abused its discretion by giving a flight instruction.  (ECF No. 9-1, Exh. 8 at pp. 6-7.)  Buchanan did not cite federal case law or state cases employing a federal constitutional analysis.  *Id*. Rather, Buchanan relied solely on state cases and state law.  *Id*.  Neither did he allege facts well within the mainstream of federal constitutional law.  *Id*.  As explained by the Sixth Circuit Court of Appeals, a claim has not been fairly presented unless the precise federal claim being raised in a habeas petition was also raised in the state appellate court *as a federal claim*:

> To comply with the exhaustion doctrine, the petitioner must fairly present the "substance" of his federal habeas claim to the state courts so that the state judiciary has the first opportunity to hear the claim.  *Lyons v. Stovall*, 188 F.3d 327, 331 (6th Cir. 1999).  The petitioner must present both the factual and the legal bases of the claim. *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004).  In other words, a petitioner must present "the same claim under the same theory" to the state court.  *Id*. at 552-53 (citation and internal quotation marks omitted).  It is not sufficient that all the facts necessary to support the federal claim were before the court or that the petitioner made a "somewhat similar" state-law claim.  *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982) (*per curiam*) (*citing Picard v. Connor*, 404 U.S. 270, 276-77, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)).

*Gross v. Warden*, 426 Fed. App'x. 349, 355 (6th Cir. 2011); *accord Catalano v. Colson*, 493 Fed. Appx. 696, 698 (6th Cir. 2012).

Buchanan first attempted to argue that the flight instruction violated his due process rights as well as his right to a fundamentally fair trial before the Ohio Supreme Court.[4]  (ECF No. 9-

---

[4]  Though Buchanan's memorandum before the Ohio Supreme Court mentions "due process" and deprivation of a "fundamentally fair trial," the argument is largely framed as an abuse of discretion as it was in the lower court.  (ECF No. 9-1, Exh. 16 at pp. 3-4.)  Thus, it is questionable whether Buchanan adequately raised a federal constitutional

1, Exh. 16.)  Assuming *arguendo* that Buchanan's mere assertion that his right to due process

and a fundamentally fair trial was violated would be sufficient to satisfy the fair presentation

requirement, this belated attempt to raise a federal constitutional claim for the first time before

the Ohio Supreme Court does not cure his failure to raise the same argument, in its federal

dimensions, before the state appellate court.  "[S]tate prisoners must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct.

1728, 144 L.Ed.2d 1 (1999). A federal constitutional claim is "fairly presented when it is

presented at the first possible opportunity" within one completed round of a state's appellate

review. *See, e.g., Cottenham v. Jamrog*, 248 Fed. App'x. 625 (6th Cir. 2007) *(citing Caver v.

Straub*, 349 F.3d 340, 346 (6th Cir. 2003)); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998)

(finding that the doctrine of *res judicata* applies to constitutional claims that could have been

raised in a direct appeal, as well as to the constitutional claims that could have been raised in any

post-conviction proceeding.) *(citing State v. Combs*, 100 Ohio App. 3d 90, 652 N.E.2d 205, 209

(Ohio Ct. App. 1994)).  As Ohio courts would no longer consider Buchanan's claim due to the

---

claim before the Supreme Court.  The Sixth Circuit has explained, "[o]ur cases view [a
petitioner's] isolated allusion to 'constitutional rights to due process and a fair trial' as
failing to afford the [state] courts adequate notice that [he] intended to invoke the Due
Process Clause." *Katt v. Lafler*, 271 Fed. App'x. 479, 482 (6th Cir. 2008) *(citing
Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (where a petitioner alleged that he
had been deprived of "due process and a fair trial by an impartial jury" and cited the Sixth
and Fourteenth Amendments, he had not "fairly presented" a federal claim to the state
courts); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) ("[G]eneral allegations of
the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that
specific constitutional rights were violated."); *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th
Cir. 1995) (while a petitioner need not develop a constitutional argument at length, "he
must make one; the words 'due process' are not an argument.")).

-14-

doctrine of *res judicata*, this ground for relief is procedurally defaulted. *See, e.g., Patterson v. Kelly*, 2012 U.S. Dist. LEXIS 15590 at *5 (N.D. Ohio Feb. 8, 2012); *Bruce v. Tibbals*, 2011 U.S. Dist. LEXIS 117771 (N.D. Ohio May 11, 2011); *see also Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th Cir. 2008) (holding Ohio's application of *res judicata* is an actually enforced, adequate and independent state ground on which Ohio state courts consistently refuse to review the merits of a defendant's claims).

Therefore, ground two of the petition should be dismissed as procedurally defaulted unless there are sufficient reasons to excuse the default.

### 2. Ground Three: Prosecutorial Misconduct

Respondent asserts that ground three is also procedurally defaulted because Buchanan did not raise a contemporaneous objection concerning the relevant conduct. (ECF No. 9 at 19.) Respondent avers that the state appellate court enforced the contemporaneous objection rule against Buchanan by performing only a plain error review. *Id*.

With respect to Buchanan's prosecutorial misconduct argument, the state appellate court stated as follows:

> P10  Appellant argues the prosecutor's comments made during closing argument included misstatements of facts about witness Autum Welsh's testimony and improper vouching for the credibility of witness Stephanie Christmas, and implied defense counsel would mislead the jury during his closing argument.  We note no objections were made to the complained of comments; therefore, the matter must be reviewed under a plain error standard.

*Buchanan*, 2013 Ohio App. LEXIS 975 at ¶10 (emphasis added).  The state court then conducted a lengthy review, ultimately finding that the prosecutor's statements did not rise to the level of plain error.  *Id*. at ¶¶10-20.

In Ohio, a petitioner waives an alleged error when he fails to make a contemporaneous objection. *See Osborne v. Ohio*, 495 U.S. 103, 124 (1990) (recognizing Ohio's long-standing contemporaneous objection rule). The Sixth Circuit has held that Ohio's "contemporaneous-objection rule is an adequate and independent state ground barring federal habeas review, *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), and that plain-error review is not inconsistent with the procedural default." *Awkal v. Mitchell*, 613 F.3d 629, 648-649 (6th Cir. 2010)[5] (citing *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006)); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). "The state court's plain error review did not constitute a waiver of the procedural default." *Mason v. Brunsman*, 483 Fed. Appx. 122, 130-31 (6th Cir. 2012), *cert. denied* 133 S. Ct. 447 (2012); *see also Shafer v. Wilson*, 364 Fed. Appx. 940, 945 (6th Cir. 2010) (finding that the State of Ohio expressly enforced its contemporaneous objection rule where "the last state court to render a reasoned opinion in this case, the Ohio Court of Appeals on direct appeal, noted the failure to object, applied plain-error review, and denied [appellant's] claims for relief"); *cf. Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011) ("Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule.")

In the instant case, Buchanan's counsel never objected to the prosecution's statements during closing arguments. (Tr. 404, 423, 428.) Accordingly, the first three elements of *Maupin* test are satisfied, as Buchanan failed to comply with the contemporaneous objection rule, the state appellate court actually enforced the rule, and the rule constitutes an "independent and

---

[5] The Sixth Circuit's decision in *Awkal* presents an almost identical factual scenario. Therein, the petitioner argued that the prosecutor engaged in misconduct, but the Ohio Supreme Court invoked the contemporaneous objection rule and reviewed only under the plain error standard. 613 F.3d at 648. The *Awkal* court found that the prosecutorial conduct claim was, therefore, procedurally defaulted.

-16-

adequate" state ground foreclosing federal review.  As such, ground three is procedurally defaulted unless Buchanan can demonstrate cause and prejudice.

### 3.  Grounds Four and Five: Ineffective Assistance of Counsel

In grounds four and five, Buchanan argues that both his trial and appellate counsel were ineffective.  (ECF No. 1.)  Respondent avers that these claims were never fairly presented to the state courts and Buchanan's attempts to raise them in an untimely App. R. 26(B) application failed to preserve the issues for habeas review.  (ECF No. 9 at 20-22.)  A review of the procedural history confirms that Buchanan did not raise the substance of his ineffective assistance of trial and appellate counsel claims, as contained in his fourth and fifth grounds for habeas relief, on direct appeal before either the state appellate court or the Ohio Supreme Court. (ECF No. 9-1, Exhs. 8, 9 & 16.)  To the extent raised, Buchanan's ineffective assistance of appellate and trial counsel claims were first asserted in his untimely 26(B) application.  (ECF No. 9-1, Exh. 19.)

Sixth Circuit holdings guide the application of the *Maupin* test for procedural default where a petitioner's Rule 26(B) motion has been denied as untimely.

> By the time [petitioner] filed his Rule 26(B) motion in June 2006, "it was well established that claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals." *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002) (considering whether Rule 26(B) was an independent and adequate state procedural rule as of May 1998).  Since at least 1996, Ohio law has provided sufficient guidance on what constitutes a "good cause" for a late filing under Rule 26(B).  *Id*. at 578.  Furthermore, as of January 1996, "the time constraints of Rule 26(B) were firmly established and regularly followed." *Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008) (discussing *Fautenberry v. Mitchell*, 515 F.3d 614, 641 (6th Cir. 2008)) (emphasis omitted).  Although we have, in prior cases, found Rule 26(B) not to be an adequate and independent ground on which to find procedural default, those precedents are not applicable here because Rule 26(B) was firmly established and regularly followed

-17-

by June 2006. *See id.* at 862 (applying the "firmly established and regularly
followed" requirement "as of the time Rule 26(B) was to be applied").  Thus, we
conclude that [petitioner] has procedurally defaulted his claims of ineffective
assistance of appellate counsel.

*Hoffner v. Bradshaw*, 622 F.3d 487, 504-505 (6th Cir. 2010) (footnotes omitted).

Applying the *Maupin* test, the state court found Buchanan failed to comply with an

applicable state procedural rule, namely the timeliness requirement of App. R. 26(B).  In

addition, the state court unequivocally enforced the state procedural sanction by foregoing

consideration of Buchanan's assignments of error on the merits.  Courts in this district have

found the timeliness requirement of Ohio App. R. 26(B) to be an independent and adequate state

ground on which the state can foreclose federal review.  *See, e.g. Luecke v. Lazaroff*, 2015 U.S.

Dist. LEXIS 94093 at *25 (N.D. Ohio Apr. 14, 2015); *Barnes v. Kelly*, 2015 U.S. Dist. LEXIS

77081 at *17 (N.D. Ohio, Feb. 25, 2015); *see also Kidd v. Warden, London Corr. Inst.*, 2014

U.S. Dist. LEXIS 180761 at *14 (S.D. Ohio, Dec. 9, 2014).

As Buchanan failed to comply with the time restraints contained in App. R. 26(B) and,

consequently, no state court considered the merits of his ineffective assistance claims, grounds

four and five of the petition are procedurally defaulted.

### 4. Cause and Prejudice

Finally, Buchanan has failed to demonstrate cause and prejudice for defaulting grounds

two through five of his petition.  As explained by the Sixth Circuit Court of Appeals:

The "cause" standard in procedural-default cases requires the petitioner to show
that "some objective factor external to the defense impeded counsel's efforts" to
raise a claim in the state courts. *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct.
1454, 113 L.Ed.2d 517 (1991) (internal quotation marks omitted).  Such factors
may include interference by officials, an attorney error rising to the level of
ineffective assistance of counsel, or a showing of a factual or legal basis for a

-18-

claim that was not reasonably available. *Id*. at 493 94, 111 S.Ct. 1454.

*Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012).

In his Traverse, Buchanan raises two arguments that can be construed as arguing "cause." First, Buchanan concedes that his App. R. 26(B) application was untimely, but notes that as "an untrained and uneducated layman" he was unaware "such a remedy even existed let alone it's [sic] filing requirements." (ECF No. 11 at 8.) Second, Buchanan asserts that the appellate court failed to send him a copy of the order denying his Rule 26(B) application as untimely and, instead, sent the notification to his former appellate counsel. (ECF No. 11 at 4, 11-1 at 2.)

The Sixth Circuit has found that a petitioner's *pro se* status in the state courts and ignorance of the law is insufficient to establish cause. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (finding Bonilla's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default); *see also Tolliver v. Sheets*, 530 F.Supp.2d 957, 981 (S.D. Ohio 2009); *Arnold v. Warden, Lebanon Correctional Inst.*, 832 F.Supp.2d 853, 859 (S.D. Ohio 2011). Thus, Buchanan's *pro se* status and ignorance of Ohio's procedural rules cannot serve as cause to excuse the default of his habeas claims. Second, crediting Buchanan's assertion that he was not notified that his 26(B) application had been denied, the Court finds this insufficient to constitute cause. While the lack of notification may have caused Buchanan to submit his appeal to the Supreme Court in an untimely manner, his claims were already defaulted due to his failure to timely file the 26(B) application with the state appellate court. A subsequent timely appeal to the Supreme Court of Ohio would not have cured this default. As Buchanan has failed to set forth any cause for his default, the issue of prejudice need not be addressed.

Finally, Buchanan does not raise a colorable actual innocence claim in his Petition. Although Buchanan steadfastly maintains that he was wrongfully convicted, the essence of his argument is that his version of events is more credible than that of the victims.  However, an actual innocence claim will only excuse a procedural default where it is supported by "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324; *Jones*, 489 F.Supp.2d at 807.  Buchanan has provided no new evidence, therefore, his procedural default cannot be excused.

As such, it is recommended that grounds two through five be dismissed as procedurally defaulted.

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

-20-

Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S.   , 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006)

-21-

(*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*,       U.S.      , 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786 87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A. Ground One: Sufficiency and Manifest Weight of the Evidence Claims**

In ground one, Buchanan contends his conviction: (1) lacked sufficiency; and, (2) was against the manifest weight of the evidence.  (ECF No. 1.)  The Court will address only sufficiency, as manifest weight claims are not cognizable on federal habeas review.[6]  *See, e.g.,*

---

[6]  As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest

*Nash v. Eberlin*, 437 F.3d 519, 524 (6ᵗʰ Cir. 2006); *accord Hess v. Eberlin*, 2006 U.S. Dist. LEXIS 99990, 2006 WL 2090093 at *6 (S.D. Ohio 2006).

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6ᵗʰ Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 U.S. App. LEXIS 29301, 1993 WL 460782 at * 3 (6ᵗʰ Cir. 1993) citing *Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court recently emphasized that habeas courts

---

miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, 2006 U.S. Dist. LEXIS 99990, 2006 WL 2090093 at *7 (S.D. Ohio 2006), quoting *State v. Martin*, 20 Ohio App. 3d 172, 20 Ohio B. 215, 485 N.E.2d 717 (Ohio Ct. App. 1983). Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Buchanan's convictions were against the manifest weight of the evidence. *Id.*

must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury     not the court     to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'  *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766 , 772, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S.Ct. 2060, 2062, 182 L. Ed. 2d 978 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial."  *Id*. (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

The state appellate court found no merit to Buchanan's sufficiency claim explaining as follows:

> P22  On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus,

-24-

following *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541.  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

P23  Appellant argues the evidence is so slight and against the totality of the circumstances to support the convictions for aggravated burglary (R.C. 2911.11) and aggravated robbery (R.C. 2911.01) with firearm specifications (R.C. 2941.145).  The elements of the offenses are as follows:

[R.C. 2911.11] (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

[R.C. 2911.01] (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;

(3) Inflict, or attempt to inflict, serious physical harm on another.

P24  Appellant's challenge to his convictions is based on the credibility of the

-25-

witnesses and the believability that he had a weapon.

P25  The defense theory as advanced in opening statement was that appellant went
to the Powell/Christmas residence to buy marijuana from Mr. Powell.  T. at 121
122.  An argument ensued and Mr. Powell stabbed appellant.  T. at 124-125.
Appellant never had a gun and none was found on the premises.  T. at 127.

*Buchanan*, 2013 Ohio App. LEXIS 975 at **7-9.

The state appellate court summarized the testimony of the victims, Mr. Powell and Ms.

Christmas, indicating that Buchanan: (1) entered their home with a gun; (2) pointed the gun at

Mr. Powell's head and threatened him; (3) demanded "everything" the victims had, directing his

accomplice remove money from Mr. Powell's pocket.  *Id*. at ¶¶26-29.  The state appellate court

clearly identified the correct standard governing sufficiency of the evidence claims.  Also, the

court correctly found that the victims' testimony, if credited by the jury, was sufficient to

substantiate all the elements of Buchanan's convictions.  This Court agrees with both

assessments.  Buchanan's complaint is primarily that the jury should have believed his version of

the events or that his version of events is more plausible.  Neither of these arguments detracts

from the sufficiency of the evidence supporting his convictions as credibility determinations are

reserved for the finder of fact.

In light of the above, there is nothing unreasonable about the state court's determination

that sufficient evidence existed to support Buchanan's convictions.  Therefore, his first ground

for relief is without merit.

-26-

## V. Conclusion

For the foregoing reasons, it is recommended that Buchanan's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: September 8, 2015

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**